People of the State of Illinois, Defendant in Error, v. Robert Knaze, Plaintiff in Error.

Gen. No. 40,016.

Opinion filed November 17, 1938.

SINON A. MURRAY, of Chicago, for plaintiff in error; LOUIS A. ROSENTHAL, of Chicago, of counsel.

THOMAS J. COURTNEY, State's Attorney, for defendant in error; EDWARD E. WILSON, JOHN T. GALLAGHER, MELVIN S. REMBE and BLAIR L. VARNES, Assistant State's Attorneys, of counsel.

MR. JUSTICE BURKE delivered the opinion of the court.

An information was filed in the municipal court on November 3, 1937, charging that on October 30, 1937, defendant was unlawfully and knowingly an inmate of a certain house of prostitution and assignation and place for the practice of fornication, prostitution and lewdness, situated at 2606 Calumet avenue, Chicago. It appears that four cases, against Robert Knaze, Benner Knaze, Curtis Littles and Arthur Lindsay, were separately on for trial and that the parties stipulated that the four cases be tried and heard together.

Defendant pleaded not guilty, a trial by jury was waived, and the court found defendant guilty and sentenced him to serve a term of six months in the House of Correction. Defendant did not offer any evidence in his behalf. We have considered the contention that the information is insufficient. We are satisfied, however, that it does sufficiently inform defendant of the nature and cause of the accusation. The statute suffi-

ciently describes the offense. Defendant urges that hearsay evidence was improperly admitted by the court. James P. Hackett, a police officer, testified that he went to the premises at 2606 Calumet avenue at 12:30 a. m. and was admitted by one Benner Knaze; that "one of the defendants, not here, was sitting in the front room. We had a conversation for a few minutes. She asked us if we didn't want to have a drink before we went upstairs and I said, 'Yes.' · I said I'd take Scotch and soda and she said she has some bourbon and she put it into a cocktail. I paid her a dollar for the two drinks. We drank the drink and talked and she asked us if we were ready to go upstairs and I said, 'Yes.' This girl was supposed to be a Japanese girl. We started upstairs and she said, 'You can pay me now.' I paid her $10.00 and $1.00 for the drinks. I went upstairs with the defendant who isn't here and she started to undress and I placed her under arrest. This other defendant was under arrest and my partner was downstairs, and the three men defendants—this defendant (indicating, for the purposes of the record, Curtiss Littles) was in bed with the girl who admitted she worked there. He said he is married to her. This defendant (indicating, for the purpose of the record, Arthur Lindsay) was in bed alone, and this defendant (indicating, for the purpose of the record, Robert Knaze) was in bed and he is supposed to be the husband of the girl who was with me." Over objection he testified to a conversation with Elizabeth Knaze, outside the presence of the accused, in the women's lockup after the arrest.

Another officer, Dennis Parkerson, testified that he came to the premises at about 1:25 a. m., that Benner Knaze came to the door and greeted him, that he pretended he was intoxicated and she put her arms around him to see if he had a gun, and then testified to a conversation, outside of the presence of the accused, with

Elizabeth Knaze. The People relied on the testimony of the two officers to convict defendant. It is apparent that without the admission of the conversations outside of the presence of defendant the record would be devoid of any proof that he was an inmate of a house of prostitution. The Supreme Court, in *People v. Newbold,* 260 Ill. 196, says (p. 199):

"A detective, who was a witness for the prosecution, testified to meeting two girls on the street who afterward went into the house and asked him to buy them a drink. He did so, and one of them asked him to go up-stairs. He asked her charge, and she told him three dollars. He asked the girls if people could go up-stairs without baggage, and they told him they could and said they had been there lots of times. This conversation and invitation should not have been admitted. The detective went into the house with two girls picked up on the street and had a private conversation with them which neither the plaintiff in error nor any other person had an opportunity to hear. While the conduct of the detective and the girls was improper it was secret, and constituted no evidence against the plaintiff in error that he permitted acts of the character referred to." In *People v. Berger,* 284 Ill. 47, the court sustained a conviction where the defendant was charged with "keeping or maintaining a house of ill fame or place for the practice of prostitution or lewdness, or letting a house, rooms or other premises for such purpose," and held that it was proper to admit testimony of a police officer as to what was said by one of a couple in the presence of the defendant. In commenting on a Georgia case, the Supreme Court, in *People v. Berger, supra,* says (pp. 51, 52): "The proprietor of a hotel or public rooming house is presumed to have a general knowledge that will guide him, in a large degree, on matters of this kind. It has been held that the proprietor of an establish-

ment of a *quasi* public character is presumed by law to know what takes place in his own establishment, to the extent, at least, of throwing upon him the burden of showing, if the law is violated in the conduct of the place, that it is not his fault. (*Sanders v. State,* 74 Ga. 82.) In this last case the court in so holding held that such a rule was in accordance with justice and common sense. In some jurisdictions the conversations of those in the house, even out of the presence of the accused, are competent to show the character of the house. (*State v. Toombs,* 79 Iowa, 741; *Herzinger v. State,* 70 Md. 278.) Under the holding of this court in *People v. Newbold,* 260 Ill. 196, such conversations out of the presence of the accused would not be admissible. We think, however, that under the circumstances of this case these conversations, having, as we have held, taken place in the presence of plaintiff in error, were admissible on the trial. . . . An admission or confession may be implied from the conduct of the party when charged with a crime or with complicity therein, or when statements are made in his presence affecting him, when the circumstances afford him an opportunity to act or speak in reply and men similarly situated would naturally deny the implied guilt or make explanations or statements.'' The opinion in the *Berger* case points out that on a prosecution for keeping such a house the State may prove the character of the inmates and frequenters of the house, and the bad reputation of those who visit such a house. In the case at bar the People did not attempt to prove the reputation of the house or of the persons who visit it. The testimony to which defendant objected, of conversations out of the presence of defendant, should have been excluded. It was clearly hearsay. Such conversations did not take place in the presence of the accused. At the time of the arrest of defendant he was in bed, and it is not contended that he heard

the conversation. The testimony as to a conversation in the women's lockup was clearly hearsay as to defendant. It was a narrative statement of past events and was admissible only against the person making the same. Without the conversations to which the police officers testified defendant could not be convicted.

The judgment is reversed and the cause is remanded.

*Judgment reversed and cause remanded.*

FRIEND, P. J., and JOHN J. SULLIVAN, J., concur.